UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALON MONIGAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-CV-2907 NAB |
| | ) | |
| JEFF NORMAN, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Alon Monigan for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) The State has filed a response. (Doc. 6.) Petitioner did not file a reply and the time for doing so has passed.  Both parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

I.      **BACKGROUND**

Petitioner is currently incarcerated at South Center Correctional Center in Licking, Missouri. The underlying criminal action arose from allegations that on January 15, 2011, Petitioner committed an armed carjacking, robbery, and kidnapping against two victims, and on January 16, 2011 committed a robbery and assault on two victims unrelated to the first incident. Additionally, Petitioner failed to cooperate in his arrest on January 20, 2011. (Doc. 6-4 at 6.)

On November 9, 2012, a jury found Petitioner guilty on two counts of the Class A felony of robbery in the first degree in violation of Mo. Rev. Stat. § 569.020 (Counts I and V); three counts of the unclassified felony of armed criminal action in violation of Mo. Rev. Stat. § 571.015 (Counts II, VI and IX); two counts of the Class B felony of kidnapping in violation of Mo. Rev.

Stat. § 565.110 (Counts III and IV); one count of the Class C felony of attempted kidnapping in violation of Mo. Rev. Stat. § 564.011 (Count VII); one count of the Class C felony of assault in the second degree in violation of Mo. Rev. Stat. § 565.060 (Count VIII); and one count of the misdemeanor of resisting arrest in violation of Mo. Rev. Stat. § 575.150 (Count X). (Doc. 6-3 at 119-120.)

On January 4, 2013, the Circuit Court of the City of St. Louis, 22nd Judicial Circuit, sentenced Petitioner to terms of ten years' imprisonment on Count I, three years' imprisonment on Count II, five years' imprisonment on Count III, five years' imprisonment on Count IV, twenty years' imprisonment on Count V, twenty years' imprisonment on Count VI, two years' imprisonment on Count VII, four years' imprisonment on Count VIII, four years' imprisonment on Count IX, and one year's imprisonment on Count X in the Missouri Department of Corrections. The Circuit Court ordered the sentences for Counts I, II, V, VI, and VIII to be served consecutively and the sentences on the remaining counts to be served concurrently for an aggregate sentence of fifty-seven years. (Doc. 6-3 at 98-107, 121-124.)

On January 11, 2013, Petitioner filed a direct appeal to the Missouri Court of Appeals for the Eastern District, Case No. ED99482, claiming that the trial court erred in (1) overruling Petitioner's objection to the State's pretextual exclusion of African-American jurors contrary to *Batson v. Kentucky*, 476 U.S. 79 (1986) (hereinafter "*Batson*"); and (2) sentencing him to terms of twenty years (Count VI) and four years (Count IX) for the offense of armed criminal action in excess of the maximum penalty range permitted by Mo. Rev. Stat. § 571.015. (Doc. 6-3 at 126, 6-4 at 2.) The state appellate court affirmed Petitioner's conviction and sentence on February 25, 2014, and a mandate was issued on March 19, 2014. *State v. Monigan*, 423 S.W.3d 308 (Mo. Ct. App. E.D. 2014); (Doc. 6-6 at 1-8).

On June 6, 2014, Petitioner filed a self-represented Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Rule 29.15. (Doc. 6-8 at 9-12.) Petitioner was appointed counsel on September 21, 2017 (Doc. 6-8 at 13-14), and subsequently filed a timely Amended Motion to Vacate. (Doc. 6-8 at 28-44.) In the Amended Motion, Petitioner asserted the following grounds for relief: (1) ineffective assistance of counsel for failure to object to the joinder of the two robberies; (2) ineffective assistance of counsel for failure to adequately argue why severance of the charges against Petitioner and Petitioner's co-defendant was warranted; (3) ineffective assistance of counsel for failure to point the jury to the fact that Petitioner is right-handed while the State's evidence pointed to the perpetrator of the second incident as being left-handed; (4) ineffective assistance of counsel for failure to adequately prepare for trial, including the omission to secure the attendance of one of the victims at trial and the omission to secure and use at trial a video recording of Petitioner's presence at a shopping mall shortly before one of the charged incidents. (Doc. 6-8 at 28-44.) Petitioner's claims for post-conviction relief were denied by the Circuit Court on December 4, 2015 after an evidentiary hearing. (Doc. 6-8 at 121-30.)

Petitioner filed a notice of appeal with the Missouri Court of Appeals for the Eastern District, ED103821. (Doc. 6-8 at 132-33.) Petitioner raised two issues on appeal from the Circuit Court's denial of post-conviction relief: (1) the motion court erred in denying Petitioner's claim that trial counsel was ineffective for failure to bring to the attention of the jury that Petitioner was right-handed after the State's witness testified that the perpetrator held the gun in his left hand; and (2) the motion court erred in denying Petitioner's claim that trial counsel was ineffective for failure to challenge the joinder of the charges arising from two separate robbery incidents. On February 21, 2017, the appellate court affirmed the judgment. *Monigan v. State*, 510 S.W.3d 901, 902 (Mo. Ct. App. 2017); (Doc. 6-11 at 1-9).

On December 19, 2017, the instant § 2254 federal habeas Petition was filed by Petitioner's counsel. Petitioner raises the following grounds for relief:

> **Ground One:** The Missouri Court of Appeals reached an unreasonable determination of the facts and an unreasonable interpretation of clearly established federal law in consideration Petitioner's *Batson* claim.

> **Ground Two:** Trial counsel was ineffective because he failed to move to sever the charges.

> **Ground Three:** Trial counsel was ineffective because he failed to present evidence that Petitioner is right-handed when the gunman held the weapon in his left hand.

> **Ground Four:** Post-conviction counsel was ineffective because he failed to raise and litigate trial counsel's ineffectiveness for failing to convey a plea offer of 20 years, which resulted in a procedural default.

(Doc. 1.)

On March 27, 2018, Respondent filed a Response to Order to Show Cause. (Doc. 6.) As to Grounds One and Three, Respondent argues that the state courts' adjudication of these claims was reasonable and entitled to deference. As to Ground Two, Respondent argues that the claim is procedurally defaulted and should be denied because Petitioner failed to include this claim in his appeal of the denial of his post-conviction motion. As to Ground Four, Respondent argues this claim is also procedurally defaulted because Petitioner failed to raise it in any of his prior state proceedings.

## II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of

alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81

(2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

## III.   DISCUSSION

### A.  Ground One: State's Peremptory Strike of Two Venireman

Petitioner argues that the trial court erred by permitting, over defense counsel's objection, the State's peremptory strikes of two African American venirepersons, M.B. and F.B. On direct appeal, Petitioner specifically argued that the State failed to offer a race-neutral explanation and thus violated *Batson*. Upon review of the merits of the claim, the appellate court affirmed the trial court's decision, holding:

> The prosecutor explained that he used his peremptory strikes to eliminate M.B. and F.B. because both expressed some concerns about the range of punishment for robbery and the prosecutor believed M.B. and F.B. would be less inclined to consider the full range of punishment. The prosecutor also stated that M.B.'s answers regarding the burden of proof suggested he would hold the State to a higher burden of proof than required by the law.

> Defendant argued that the State's reasons were pretextual because other venirepeople also thought the far end of the range of punishment was harsh. Defendant identified one venireperson who questioned the range of punishment, but did not describe her race. Moreover, when specifically asked to specify a person he believed to be similarly situated, Defendant failed to do so. Additionally, Defendant did not attempt to establish as pretextual the State's reason for striking M.B. because of the concerns he would hold the State's proffered explanations to an increased burden of proof. Thus, the Defendant failed to demonstrate that the State's proffered explanations were merely pretextual. Accordingly, the trial court did not plainly err in overruling Defendant's *Batson* challenges.

(Doc. 6-6 at 7-8.) In the instant petition, Petitioner claims that the appellate court reached an unreasonable determination of the facts and an unreasonable interpretation of clearly established federal law by denying this claim.

Federal law is well settled that the Equal Protection Clause forbids a prosecutor from using peremptory challenges to exclude otherwise qualified persons from the jury based solely on their

race. *Devose v. Norris*, 53 F.3d 201, 204 (8th Cir. 1995). "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson*, 476 U.S. at 89. In *Batson*, the United States Supreme Court held that "in order to establish an equal protection violation, a defendant must first establish a prima facie case of purposeful discrimination in the selection of the jury panel." *Id.* at 96. Indeed, it is the defendant's burden "to prove the existence of purposeful discrimination." *Id.* at 93.

*Batson* provides a three-step process to determine the validity of peremptory strikes by the prosecutor: (1) the defendant must make a prima facie showing that the state exercised a peremptory strike because of race; (2) if such a showing is made, the burden shifts to the state to articulate a race-neutral explanation for striking the prospective juror; and (3) the trial court must decide whether the defendant has proven purposeful discrimination. *Id.* at 96-98. "A neutral explanation in this context means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991).

Each of the three steps of *Batson* inquiry involves a determination of fact, and therefore habeas review turns on whether the state court decision was based upon an unreasonable determination of the facts. *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001). Such review presumes that the state courts found the facts correctly, unless petitioner rebuts that presumption with clear and convincing evidence. *Id.* A federal court's review of the trial court's determination of a *Batson* challenge is particularly deferential:

> We regularly defer to the fact-findings of trial courts because those courts are uniquely positioned to observe the manner and presentation of evidence. Our

7

deference to trial court fact-finding is doubly great in the present circumstance because of the "unique awareness of the totality of the circumstances surrounding voir dire," and because of the statutory restraints on the scope of federal habeas review.

*Id.* (*citing Moore*, 895 F.2d at 486). Even erroneous fact finding on the part of a state court does not justify granting a federal writ of habeas corpus if the court erred "reasonably." *Id.*

This Court finds that the Missouri Court of Appeals' decision upholding the trial court's ruling on Petitioner's challenge to venirepersons M.B. and F.B was not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial. *See United States v. Roan Eagle*, 867 F.2d 436, 441 (8th Cir. 1988) (in context of *Batson* inquiry, "[i]f the trial judge is able to reach a determination on the basis of a short exchange between prosecutor and defense then that is the trial court's prerogative"), *cert. denied*, 490 U.S. 1028 (1989).

This Court also does not find merit in Petitioner's argument that the prosecutor's reasons for striking venirepersons M.B. and F.B. were pretextual and unsupported by the record. The transcript of the voir dire proceedings shows that the prosecutor provided race-neutral reasons for striking venirepersons, M.B. and F.B.:

> STATE: Okay. [F.B.] is our religious worker. He works for the Baptist church, he's a pastor. He indicated, when I spoke with him, equivocation about his ability to consider the far range of the punishment, although ultimately he did come around to the Court's satisfaction.
>
> I believe that he would be less inclined to be able to consider the full range of punishment, and I think there were some issues that he and I had going back and forth. I think those were reasons and beyond the scope of his apparent race.

. . .

> STATE: Okay. If I remember correctly, [M.B.], oh, the firefighter. Judge, I do not agree with [defense counsel's] assertion that when he indicated that he would never know if it did or didn't happen because he wasn't there was an assertion that he was going to lower the standard of beyond a reasonable doubt.

My opinion of that in watching him say that, he was sitting directly in front of me was, that he in fact was going to raise the standard beyond a reasonable doubt. That was my interpretation of it. He also had issues with the far end range of punishment.

(Doc. 6-1 at 352-53.)

Following the State's explanation for striking M.B. and F.B., the record further reflects that defense counsel failed to show that the State's proffered explanation was mere pretext for a racially motivated strike. The State directly asked defense counsel to point to a similarly situated Caucasian venireperson who was not struck. (Doc. 6-1 at 354.) As the appellate court noted, defense counsel failed to answer the question. (*Id.*) The ultimate burden of persuasion regarding racial motivation lies with the opponent of the strike. *Purkett v. Elem*, 514 U.S. 765, 768 (1995). "It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike carried his burden of proving purposeful discrimination." *Purkett*, 514 U.S. at 768 (emphasis in original). Petitioner offered nothing to the trial court to support any argument that the State's strikes demonstrated purposeful discrimination.

Moreover, the record clearly shows that the trial court considered the totality of the facts and circumstances of the case in evaluating defense counsel's *Batson* challenge. The trial court expressly considered that the State struck one Hispanic male, four Caucasian males or females, and seven African Americans. (Doc. 6-1 at 355.) The trial court then considered "the voir dire as a whole, the representations of counsel and the review of the pattern of the strikes and the availability to the defense or the composition of the pool as available to the defense" and found that "the State's explanations of the reasons for peremptory strikes [were] credible." (*Id.* at 358.)

In the instant § 2254 Petition, Petitioner has neither shown that that the State's reasons were pretexts for a race-based motive, nor has he shown that white venirepersons who were not

struck were similar to M.B. and F.B. in all relevant respects. Thus, in view of the trial court's consideration of the totality of the facts and circumstances of the case coupled with the lack of any similarly situated white venireperson not excluded by the State, this Court finds no clear error.

Ground One of the Petition will be denied.

### B.  Ground Two: Ineffective Assistance of Counsel for Failure to Move to Sever the Charges

#### 1.  Procedural Default

Petitioner argues that the appellate court incorrectly determined that trial counsel's strategy for not moving to sever the robbery offenses was reasonable. Respondent maintains that this claim is procedurally defaulted for failure to raise it in his post-conviction appeal and, if this Court finds otherwise, the state court determination should be entitled to deference. (Doc. 6 at 10-13.)

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings to give the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003); *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997); *see also* 28 U.S.C. § 2254(c). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Wemark*, 322 F.3d at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. *Id.* at 1022 (quoting *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)).

Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default, or a fundamental miscarriage of justice. *Jones v. Wallace*, No. 4:12 CV 891 JMB, 2015 WL 4599562, at *6 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977)).

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). If a petitioner has not previously presented the substance of a habeas claim and has no available procedure for doing so because he has defaulted with respect to legitimate state requirements, federal courts are barred from considering such a ground for habeas relief. *Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011); *King v. Kemna*, 266 F.3d 816, 821 (8th Cir. 2001).

In the instant case, Petitioner claims his trial counsel was ineffective for failing to move to sever his two robbery charges. Respondent argues that this Court should not consider this claim because Petitioner failed to raise it in his post-conviction appeal.  In Missouri, claims of ineffective assistance of trial counsel must be raised in a motion for post-conviction relief pursuant to Rule 29.15. *See Shigemura v. Groose*, 45 F.3d 250, 251 (8th Cir. 1995) (internal citations omitted). To preserve those claims for federal habeas review, the petitioner must also raise them on appeal from the denial of the post-conviction motion. *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) (citing *Gilmore v. Armontrout*, 861 F.2d 1061, 1065 (8th Cir. 1988) ("Failure to raise a claim on appeal from the denial of a post-conviction motions erects a procedural bar to federal habeas review.").

The Court cannot agree with Respondent's position. A review of the record clearly demonstrates that Petitioner has exhausted the instant claim by raising it in his amended post-conviction motion and the subsequent appeal. Petitioner filed an Amended Motion to Vacate which included an ineffective assistance of counsel claim based on trial counsel's failure to challenge the joinder of the two robberies. (Doc. 6-8 at 31-36.) On December 4, 2015, the circuit court held, in part:

> Assuming that [Petitioner's] claim regarding failure to move to sever charges is
> cognizable in this proceeding – and such misjoinder would appear to be mere trial

11

> error – the Court concludes that counsel's decision not to file such a motion was
> not deficient performance. Evidence of [Petitioner's] participation in the [first]
> robbery would have been admissible in the trial of the [second] robbery charges,
> inasmuch as [Petitioner] was apprehended when riding in the vehicle stolen on that
> occasion, which vehicle also contained property stolen in the [second] robbery. *C.f.*
> *State v. Bechhold*, 65 S.W.3d 591 (Mo.App.S.D. 2002). Even if such evidence
> would not have been admissible at both trials, the charges were of sufficiently
> similar character and were sufficiently "connected" to be properly joined. Mo.R.Ct.
> 23.05; *State v. Conley*, 873 S.W.23d 233 (Mo. banc 1994); *State v. Reeder*, 182
> S.W.3d 569 (Mo.App.E.D. 2005). Counsel cannot be deemed deficient for failing
> to file a baseless motion.

(Doc. 6-8 at 129).

Petitioner filed a post-conviction appeal in which he argued the motion court erred in

denying his claim that trial counsel was ineffective for failure to challenge the joinder of the

charges arising from two separate robbery incidents. (Doc. 6-9 at 14-28.) On February 21, 2017,

the appellate court affirmed the circuit court's judgment holding:

> First, we note the trial judge denied trial counsel's pretrial motion to sever the
> defendants. The trial judge also denied trial counsel's renewed motion to sever the
> defendants. At the post-conviction motion evidentiary hearing, trial counsel
> testified he did not move to sever the charges from the two incidents because the
> trial judge was not going to grant such a motion, to-wit: "If [the judge] wasn't going
> to [sever] the defendants, he wasn't going to [sever] the offenses."
>
> Trial counsel also maintained asking for severance of the charges was not
> reasonable because they were connected. Both Appellant and Co-defendant were
> apprehended in the car that was stolen in the [first] robbery with items in it stolen
> in the [second] robbery. The motion court agreed and made a finding there was
> evidentiary commonality between the two offenses. There was no basis to object
> because joinder was proper in that the charges were of sufficiently similar character
> and were sufficiently connected to be properly joined. Both incidents involved the
> robbery of purses and abduction or attempted abduction of women on the street at
> night in relatively close proximity on consecutive days less than 24 hours apart.
> Both incidents involved the use of physical force, or threatened physical force, with
> a gun, by a principal robber and co-actors.
>
> Further, the motion court noted the defense theory pursued at trial by trial counsel
> was misidentification and evidence of alibi, which trial counsel vigorously pursued.
> Seeking severance of the charges would not make much sense in light of such a
> defense strategy, which the motion court specifically found to be reasonable and
> effective.

Counsel is not ineffective for failing to make a non-meritorious motion to sever the charges for trial or a non-meritorious objection to trying the charges together. *Smith v. State*, 324 S.W.3d 497, 500 (Mo.App. E.D. 2010); *Middleton v. State*, 103 S.W.3d 726, 741 (Mo. banc 2003). Counsel provided convincing evidence the trial court would have likely denied a motion to sever the charges by twice denying the request to sever the defendants. Further, the suggested motion would complicate and be contrary to the trial strategies pursued by counsel, strategies the motion court found to be reasonable and not ineffective. Since counsel's performance was not deficient, Appellant cannot fulfill the second prong, that counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 686; *Deck*, 68 S.W.3d at 425. If either the performance of the prejudice prong of the test is not met, then we need not consider the other, and Appellant's claim of ineffective assistance of counsel must fail. *Simmons*, 955 S.W.2d at 746. Here Appellant failed to meet both prongs. Accordingly, the motion court's ruling was not in error. *Strong [v. State]*, 263 S.W.3d [636, 642 (Mo. banc. 2008).]

(Doc. 6-11 at 7-9.)

The Court notes if Petitioner framed the instant Ground Two as a constitutional claim of trial court error, as opposed to an ineffective assistance of counsel, his claim would have been procedurally barred for failure to raise the instant claim in his direct appeal. *See Stallings v. State*, 784 S.W.2d 862, 863 (Mo. Ct. App. 1990) (the failure to raise constitutional claims of trial error on direct appeal precludes review of such claims in any further state court proceeding and thus results in a procedural default in the absence of rare and exceptional circumstances); *see also Jolly*, 28 F.3d at 53; *Kennedy v. Delo*, 959 F.2d 112 (8th Cir. 1992). However, because Petitioner framed the instant Ground Two as ineffective assistance of counsel claim in both his amended Rule 29.15 motion and on appeal from the denial of that motion, Petitioner is not procedurally barred from pursuing Ground Two here.

### 2. *Merits of Ineffective Assistance Claim*

To obtain relief based on ineffective assistance of counsel, a petitioner must establish: (1) that the trial counsel's performance fell below an objective standard of reasonableness; and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland,* 466 U.S. at 687–88.

13

Both prongs of *Strickland* must be shown to succeed on a claim for ineffective assistance of counsel. *Id.* at 697. Therefore, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, then that course should be followed." *Id.*

To satisfy the first prong of *Strickland,* a petitioner must identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable, professional judgment. *Id.* at 688. Then, the court must determine whether "in light of all the circumstances, the identified actions or omissions were outside the range of professionally competent assistance." *Id.* In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To satisfy the second prong of *Strickland,* a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. *Id.* In determining whether sufficient prejudice does exist, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Additionally, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to law." *Id.* at 694.

As stated above, Petitioner unsuccessfully argued in his appeal from the denial of post-conviction relief that his trial counsel was ineffective for failing to move to sever his two robbery charges. This Court finds the decision of the Missouri Court of Appeals is not based on an unreasonable determination of the facts. To the contrary, the appellate court's finding is fully supported by the record. Specifically, the March 19, 2015 post-conviction hearing transcript of Petitioner's trial counsel, Nick Zotos, reflects that Mr. Zotos filed a pretrial motion to sever the

14

defendants, and a renewed motion to sever defendants, both of which were denied by the trial court.  (Doc. 6-7 at 9-12.) Mr. Zotos testified that "If [the trial judge] wasn't going to [sever] the defendants, he wasn't going to [sever] the offenses." *Id.* at 16. He testified that it was not plausible that the trial court would grant a motion to sever charges, stating "You know, maybe I should have raised, filed a motion to sever the offenses, but once a judge said he's going to throw [co-defendant] into Monigan's other case, what was the point?" *Id.* at 16-17.  As the Missouri Court of Appeals discussed, Mr. Zotos further testified regarding the commonality between the incidents that were the bases for the charges. *Id.*

In light of the above evidence, it is clear that Petitioner's trial counsel's decision not to file a motion to sever charges was reasonable and cannot be said to have prejudiced his defense. *See Strickland,* 466 U.S. at 689. The Missouri Court of Appeals' adjudication of this claim was reasonable and consistent with *Strickland.* For these reasons, Ground Two of the Petition will be denied.

### C. Ground Three: Ineffective Assistance of Counsel for Failure to Present Evidence that Petitioner is Right Handed

In Ground Three, Petitioner asserts that he was denied his right to effective assistance of counsel when trial counsel failed to present evidence that Petitioner is right handed when the gunman in the second incident held the weapon in his left hand. Petitioner raised this claim in his Rule 29.15 amended motion for post-conviction relief and the subsequent appeal. (Doc. 6-8 at 38-40, Doc. 6-11 at 5-6.)

During the evidentiary hearing held by the motion court, Mr. Zotos testified that Petitioner never mentioned that he was right handed, and Mr. Zotos didn't recall observing him writing anything down such that he would notice Petitioner's dominant hand. (Doc. 6-7 at 18-20.) The first time Mr. Zotos learned that Petitioner was right handed was when he saw it in Petitioner's

post-conviction motion. *Id.* Further, during trial Mr. Zotos did not consider the victim's testimony

regarding the perpetrator holding the gun in his left hand to be significant, because Petitioner did

not point out his dominant hand and because counsel believed the facial identification was what

was important to Petitioner's defense.  *Id.* at 19-20.

The Missouri Court of Appeals addressed this claim on the merits and deferred to the

motion court in finding Petitioner's claim failed because trial counsel demonstrated reasonable

judgment and provided adequate assistance of counsel. It stated:

> Counsel cannot [sic] reasonably be expected to point out what he does not know to
> the jury. *Rotellini v. State,* 77 S.W.3d 632, 635 (Mo.App. E.D. 2002). Further,
> Appellant grabbed the victim's purse with his left [sic] hand, which could suggest
> he was left-handed. The fact he held the gun with one hand and grabbed the purse
> with the other does not conclusively establish which hand is his dominant hand.
> Even if Appellant is right-handed, he could have held the gun in his left hand, and
> thus pointing out his right-handedness would not have provided him a viable
> defense. As such, Appellant failed to establish prejudice.
>
> At trial, trial counsel's strategy and focus was on Appellant's face and the victims'
> misidentification of Appellant. Appellant buttressed this strategy with alibi
> evidence that he was elsewhere at the time of the robbery. The motion court found
> trial counsel's performance in this regard demonstrated sound trial strategy and
> adequate assistance of counsel. Strickland, 466 U.S. at 689-90. The motion court
> determined "[i]n light of the trial evidence concerning the identification of
> [Appellant], the Court finds as a matter of fact that [Appellant's] seizing the
> victim's purse with his right hand while holding the gun in his left hand was a minor
> detail and that counsel thoroughly investigated the case and exercised reasonable
> judgment in focusing on the facial identifications." We presume the motion court's
> ruling is correct, *Strong,* 263 S.W.3d at 642, and here we determine the findings
> and conclusions of the motion court with regard to trial counsel's performance are
> not clearly erroneous. *Burston [v. State]*, 343 S.W.3d [691, 693 (Mo.App. E.D.
> 2011).]

(Doc. 6-11 at 6.)

Based on the above evidence, it was not objectively unreasonable for the state court to find

that Petitioner could not establish that trial counsel's performance was deficient or that Petitioner

suffered prejudice under *Strickland.*  Trial counsel believed the facial identification was the critical

issue and appropriately focused his trial strategy on attacking that identification. (Doc. 6-7 at 28.) Further, the perpetrator grabbed the victim's purse with his right hand, which could suggest his right, and not his left, was the dominant hand. Thus, evidence that Petitioner is right handed could have little probative value and even if trial counsel's conduct was deficient in failing to present said evidence, the prejudice prong of the *Strickland* test has not been met. For these reasons, Ground Three of the Petition will be denied.

### D. Ground Four: Ineffective Assistance of Counsel for Failure to Convey Plea Offer

In Ground Four, Petitioner asserts that trial counsel was ineffective for failing to convey a plea offer of 20 years. Petitioner concedes he failed to raise Ground 4 before the state courts. Petitioner argues post-conviction counsel failed to raise this claim in his amended 29.15 post-conviction motion, which establishes cause for the default under *Martinez v. Ryan,* 566 U.S. 1 (2012).

As discussed above, the Court cannot reach the merits of a procedurally defaulted claim unless Petitioner can demonstrate cause and prejudice for default, or that failure to consider the claims will result in a fundamental miscarriage of justice. *See supra,* Part III.B.1. The Supreme Court created a "narrow exception" and held in *Martinez v. Ryan* that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. 1, 17 (2012). In order to show cause for his procedural default under *Martinez*, Petitioner must show that his post-conviction counsel was ineffective under *Strickland* and that the underlying ineffective assistance of counsel claim is substantial. For the following reasons, the Court finds that *Martinez* does not apply to allow federal habeas review in this instance.

17

First, the Court finds that post-conviction counsel did not provide Petitioner with ineffective assistance of counsel. In this case, post-conviction counsel was appointed and timely filed Petitioner's amended Rule 29.15 motion, asserting four grounds for relief. (Doc. 6-8 at 28-44). Petitioner asserts that he will testify at an evidentiary hearing that he informed post-conviction counsel of the unconveyed plea offer, but she did not raise the issue.[1] (Doc. 1 at 11.) Petitioner makes no argument about how the omission of this claim satisfies the *Strickland* standard. The presumption of effective assistance of counsel can generally only be overcome when the ignored issues are clearly stronger than those presented. *Link v. Luebbers,* 469 F.3d 1197, 1205 (8th Cir. 2006). Upon review of the record and addressed in more detail below, the Court finds that post-conviction counsel determined that the claims presented in the amended motion were the most meritorious and ones that could be supported. Therefore, "applying a heavy measure of deference to counsel's judgments," post-conviction counsel's decision not to include Ground Four in the amended motion "falls within the wide range of reasonable professional assistance" under *Strickland's* deferential standards. *See* 466 U.S. at 668.

Second, even if the Court were to find that post-conviction counsel provided ineffective assistance, the default may be excused only if the eliminated ground of ineffective assistance of trial counsel was "substantial," "which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez,* 566 U.S. at 14. The Court does not find that to be the case here.

To assess the substantiality of Petitioner's claim, the Court will evaluate Ground Four under *Strickland*. Petitioner must show that (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced [his] defense." 466 U.S. at 687. The court is not required

---

[1] The Court notes that Petitioner's original Rule 29.15 motion was filed *pro se* prior to appointment of post-conviction counsel. Petitioner's original motion contained two grounds for relief, neither of which were the failure to convey a plea offer that Petitioner alleges he discussed with post-conviction counsel. (Doc. 6-8 at 9-12.)

to address both components of the effective assistance of counsel inquiry if a petitioner makes an insufficient showing on one component. *Id.* at 697.

Petitioner's underlying allegation is that trial counsel was ineffective for failing to convey a plea offer of 20 years. Failure to convey a plea offer is a serious allegation. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused"). When a petitioner asserts a claim of ineffective assistance of counsel because a plea deal was rejected or not conveyed and the petitioner instead went to trial, in order to show prejudice the petitioner must show (1) that he *would have* pleaded guilty but for counsel's deficient conduct and (2) had he accepted the plea deal, there is a reasonable probability he would have received a less stringent sentence. *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). The second factor can be demonstrated by showing the defendant would have been enabled to enter a plea to a lesser charge or would have received a lesser sentence. *Ramirez v. United States*, 751 F.3d 604, 608 (8th Cir. 2014).

Petitioner's habeas petition does not direct the Court to evidence to support his allegations of ineffective assistance. Instead, Petitioner says an evidentiary hearing is necessary, and Petitioner will testify that "he discovered belatedly that his co-defendant had received a plea offer of 20 years from the State," and "from there, he discovered that the same offer was conveyed to him through counsel but that counsel did not convey the offer to him." (Doc. 1 at 11.) Petitioner also alleges the Circuit Attorney's Office and "evidence via trial counsel's testimony" will support his claim. *Id.* Petitioner does not proffer how the Circuit Attorney's Office or Mr. Zotos's testimony would support his claim.

19

Upon careful review of the trial transcript and post-conviction proceedings record, the Court finds no evidence to support Petitioner's allegations. The trial transcript reflects that following jury selection, the trial court explicitly asked all counsel to confirm what, if any, plea bargaining had been discussed. The Assistant Circuit Attorney and Mr. Zotos both reported that no offer had been made by the State to Petitioner, nor had Petitioner asked the State for an offer. (Doc. 6-1 at 359-361.) Co-defendant's counsel informed the trial court that the co-defendant initially offered to the State an open plea with dismissal of one of the kidnapping counts, or an open plea with dismissal of the armed criminal action count, and both were rejected by the State. *Id.* After co-defendant's offers were rejected, co-defendant's counsel asked the State for an offer, and the Assistant Circuit Attorney offered co-defendant 20 years, which co-defendant rejected. *Id.* Upon receiving all counsel's updates regarding plea negotiations, the trial court stated, "So the record is clear, at this stage the Court will not entertain a guilty plea with or without a plea bargain." (Doc. 6-1 at 361.) At that point, any on the record discussion regarding plea negotiations ceased, and the trial went forward.

Petitioner's habeas petition does not specify when Petitioner belatedly learned of the alleged plea offer. Despite Petitioner's contention that trial counsel's testimony at a new evidentiary hearing will confirm that such an offer was conveyed, trial counsel's testimony directly contradicts Petitioner's allegation that there was an offer for a plea of 20 years. At the post-conviction hearing on March 19, 2015, Mr. Zotos testified as follows:

> Q Right. And you were you ever aware of any plea offer for Mr. Monigan?
> A There was never an offer discussed.
> Q Uh-huh.
> A Because there was never a discussion for him to plead. It was never even discussed.
> Q And why was it that it was not discussed?
> A Because the mother and the defendant were insistent that he was not guilty.

> Q And when -- did you tell them what benefits of a plea or having that discussion
> would be?
> A Probably not, because I would not have compromised my relationship with the
> defendant or his mother to bring up plea when they were adamant that he was not
> guilty.
> Q So they were very --
> A I didn't get hired to plead him. I got hired to try it.

(Doc. 6-7 at 11.)

As part of the post-conviction proceedings, Petitioner was deposed on January 13, 2015.
Petitioner testified that he met with Mr. Zotos several times leading up to and throughout his trial,
and that Petitioner was aware of his co-defendant's plea discussions prior to trial. He testified that
a couple of months before his trial, Mr. Zotos discussed with him that his co-defendant would
likely get a plea deal before trial. (Doc. 6-8 at 93-95.) The testimony does not reflect whether
Petitioner was specifically aware of the length of the sentence associated with the State's plea offer
to his co-defendant. More importantly, Petitioner's testimony reflected that he was not interested
in a plea offer. Petitioner testified:

> Q: Okay. And throughout the course of this you said you had 15, maybe 20
> meetings with Mr. Zotos?
> A: Yes, about that, yeah, about 15, 20.
> Q: And leading up to the trial and you discussed what would happened if you went
> to trial versus what would happen if you pled guilty, correct?
> A: No, I never – I told him I wasn't going to pled [sic] guilty.
> Q: Okay. But he talked about this as a possible option, even though that wasn't one
> you wanted to consider?
> A: No, he never talked about it.
> Q: So you didn't even think you could plead guilty; is that what you're saying?
> A: I knew I could but I just told him straight, you know, like that I had nothing to
> do with the case so I wasn't going to plead guilty.
> Q: Okay. So it was your decision to go to trial?
> A: Right.

(Doc. 6-8 at 111.) Petitioner's father's post-conviction testimony further supports that Petitioner
and his parents discussed with trial counsel the fact that co-defendant might take a plea deal, but
no plea was discussed for Petitioner:

Q And when you retained Mr. Zotos, did you meet with him?
A Yes, ma'am.
Q Was it with [your wife] Marleta as well?
A Yes, ma'am.
Q And what did you guys discuss at these meetings?
A Well, we talked -- he talked to us about the charges Alon was facing. And he discussed somewhat of a strategy he may use if -- if Alon decided to go to trial.
Q What -- if Alon decided to go to trial. So was there discussion of the possibility that Alon was not going to go to trial?
A I don't think so. I don't think we discussed whether he would -- I don't think Zotos discussed whether or not he was not going to go to trial or whether he was going to take a plea. It was, like, from day one it was, like, trial.
Q And did you ever tell Mr. Zotos or were you aware of Mr. Zotos or did you ever tell Mr. Zotos that Alon -- that there would be no plea, that only trial?
A Repeat that question, please.
Q Did you ever tell Mr. Zotos that Alon would not take a plea? He would only go to trial?
A I can't recall. I can't recall saying anything like that, because I don't believe it was never an issue of a plea. He never brought up an issue of plea or anything, so I [sic] our whole discussion was just trial.

(Doc. 6-7 at 47-48.) There was no testimony elicited at the post-conviction proceedings to contradict the trial record or Mr. Zotos' post-conviction testimony that the State never offered Petitioner a plea deal. Trial counsel's performance cannot be found to be ineffective for failure to convey a plea offer that did not exist. *See Reed v. Norman*, No. 4:11CV1206 JCH, 2014 WL 1413536, at *8 (E.D. Mo. Apr. 11, 2014) ("this Court does not find that trial counsel's failure to convey a non-existent plea offer fell outside the wide range of professionally competent assistance sanctioned by *Strickland.*). Thus, Petitioner has not shown trial counsel's performance was deficient.

Additionally, even if this Court assumes that the State offered Petitioner the 20-year plea offer presented to co-defendant and counsel failed to convey the offer, there is no evidence that Petitioner *would have accepted* the plea offer. "In the plea negotiation context, in order to establish prejudice, a petitioner must show that the outcome of the plea process would have been different had competent counsel represented him during the plea process." *Barnes v. Hammer*, 765 F.3d

810, 814 (8th Cir. 2014) (finding no prejudice where the state court record supported finding that petitioner turned down a plea offer not due to incompetent advice, but due to "a host of other personal reasons, including that he did not want to do jail time, and that he was trying to get a better deal for his friend"). Here, although Petitioner alleges he will testify at a new hearing that he belatedly discovered an offer was conveyed to him, he does not allege that he would have accepted the offer. (Doc. 1 at 11-12.) Nor does Petitioner provide specifics on what evidence would support his claims, nor why it could not have been previously uncovered. 28 U.S.C. § 2254(e)(2). Petitioner has already testified that he told his trial counsel that he was not going to plead guilty because he had nothing to do with the incidents (Doc. 6-8 at 111), and this testimony supports a lack of prejudice from any alleged failure to convey an offer. A lack of prejudice is further supported by trial counsel's testimony that Petitioner was adamant that he was not guilty and was going to trial. (Doc. 6-7 at 11.) Based on the record, the Court finds that Petitioner has not met his burden to show that he would have accepted a plea offer of 20 years, and thus has not demonstrated prejudice. *See, e.g., Guzman v. Denney*, No. 5:14-06086-CV-RK, 2018 WL 1440607, at *5 (W.D. Mo. Mar. 22, 2018) (petitioner failed to meet his burden where he waited until his federal habeas traverse to claim that but for trial counsel's alleged advice he would have accepted a plea offer, and the record supported that petitioner rejected the plea offer because he did not want to serve five years in prison). Because Petitioner has been unable to establish any substantial ineffective assistance claim, post-conviction counsel was not ineffective for failing to raise this claim, and Petitioner cannot show cause under *Martinez* to excuse his procedural default. *Dansby v. Hobbs,* 766 F.3d 809, 834 (8th Cir. 2014); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("counsel's failure to advance a meritless argument cannot constitute ineffective assistance"). As a result, the Court will deny Ground Four as procedurally defaulted.

23

## IV.    Conclusion

Based on the foregoing, the Court finds that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied. The Court finds that the state court's findings and conclusions regarding Petitioner's claims were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Further, because Petitioner has made no showing of a denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Alon Monigan for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED. (**Doc. 1.)

**IT IS FURTHER ORDERED** that the Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate judgment in accord with this Order is entered on this same date.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of April, 2021.

24